United States District Court
Southern District of Texas
**ENTERED**
September 22, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| VS. | § | CRIMINAL ACTION NO. 2:22-CR-185 |
| | § | |
| TERRENCE JAMES BRUGGEMAN | § | |

## ORDER ON MOTION TO SUPPRESS
## SEARCH WARRANT AND EVIDENCE

Defendant Terrence James Bruggeman stands indicted on one count of possession of a machine gun in violation of 18 U.S.C. § 922(o) and three counts of possession of a firearm silencer in violation of 26 U.S.C. §§ 5841, 5861(d) and (i), and 5871. D.E. 33. Before the Court is Bruggeman's Motion to Suppress Search Warrant and Evidence (D.E. 40), his supplemental memorandum (D.E. 43), the Government's response (D.E. 44), and Bruggeman's reply (D.E. 45). Also before the Court are the parties' respective post-hearing briefs: Bruggeman's closing arguments (D.E. 56), the Government's closing arguments (D.E. 59), and Bruggeman's reply (D.E. 61). For the reasons set out below, Bruggeman's motion to suppress is **GRANTED IN PART** regarding certain property identified in the search warrant to be seized. The motion to suppress is otherwise **DENIED**.

## PROCEDURAL HISTORY

On March 21, 2023, Bruggeman requested a hearing pursuant to *Franks v. Delaware*, 438 U.S. 154 (1978), arguing that the affidavit that accompanied the search warrant application for his home and business omitted important facts and misled the issuing magistrate judge. The Court held a hearing and found that Bruggeman made the requisite "substantial preliminary showing that the affiant['s] statements were deliberately false or made with reckless disregard for the truth to allow a *Franks* hearing." *United States v. Minor*, 831 F.3d 601, 604 (5th Cir. 2016) (citations and quotation marks omitted). A hearing was held on March 21, March 22, and June 7, 2023. The sole witness, Special Agent Oscar Guardado from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), testified regarding his sworn affidavit that supported the search warrant.[1]

## FACTS

Bruggeman is a licensed firearms dealer who runs a firearms manufacturing and distribution business, Acme Tactical, out of the garage connected to his residence in Portland, Texas. In February of 2022, ATF began investigating suspicious multiple sales reports from Acme Tactical identified through the ATF National Tracing Center. On March 3, 2022, before United States Magistrate Judge Jason B. Libby, Agent Guardado signed an affidavit in support of a search warrant to search Bruggeman's residence and business for evidence of unlawful sales.

---

[1] Agent Guardado was the lead agent on this case and has been a special agent with ATF since October 28, 2019. At the time of the relevant events, Agent Guardado had been with ATF for approximately two years. He previously worked for the United States Customs and Border Protection for 11 years.

## I. Affidavit

One sales report stated that Brenda Ruiz purchased two firearms at Acme Tactical in Portland, Texas. The sole owner of this business is Bruggeman. On February 25, ATF agents in Laredo, Texas, contacted Ruiz and asked her about the firearms purchase. Ruiz denied making any firearm purchases and alleged that her Texas Identification Card had recently been stolen. Agents noted that Ruiz spoke English fluently and that a translator was not required. "Additionally, Ruiz provided her written signature sample which Agents compared to the signature on the ATF Form 4473 filled out during the alleged purchase of the two firearms. Agents noted several discrepancies between the two signatures . . . ." D.E. 40-2, pp. 4-5.

Three days later, ATF agents in Corpus Christi, Texas, interviewed Bruggeman at his business to discuss the firearm transaction. Bruggeman stated that a female, who presented an identification belonging to Ruiz, had made three previous firearm transactions, including the one in the multiple sales report. Bruggeman described the female as Hispanic and stated that she spoke very little English and communicated with the assistance of a translator.

Bruggeman stated that, on a previous occasion, this woman came into his business with a Hispanic male whom she identified as her "boss." This male was identified as "Juan Pablo Sanchez" based on the completed ATF Form 4473. Bruggeman further stated that the female and Sanchez were driving a vehicle that appeared to be manufactured in Mexico and that the license plates on the vehicle also appeared to be from Mexico.

Bruggeman confirmed the pending transfer of two firearms ordered by this female. He had accepted payment for the firearms but did not complete an invoice for the transaction due to the sale being a cash transaction. He stated that the female indicated that she was purchasing one of the firearms for herself and one for Sanchez. Bruggeman was to contact her directly upon the receipt of the firearms. During the interview with ATF agents, Bruggeman received a package that contained the firearms ordered by this woman; the agents concluded the interview and instructed Bruggeman to wait for further instructions regarding the transfer of these firearms. Agents maintained surveillance of the business and contact with Bruggeman, who stated that he had not yet heard back from the woman or Sanchez.

On March 1, ATF agents in Laredo met with Ruiz to confirm her prior statements. Ruiz consented to the agents accessing her phone, where they found a contact name that matched the phone number that the purchasing woman had given to Bruggeman. Ruiz stated that this number belonged to a male named "Leo," who runs a company that has been her residential energy consumption provider for years. Ruiz stated that she paid Leo on CashApp and provided him with her Texas Identification Card to open her utility account.  Ruiz told the agents that Leo's more recent contact information was under the name "Luz" in her contacts.

On the same day, Homeland Security Investigations (HSI) agents informed the ATF agents that a female Mexican national named Viridiana Landaverde-Sosa was turned away by United States Customs and Border Protection at the United States/Mexico border for

alleged involvement in the illegal purchasing of firearms. Landaverde-Sosa's nonimmigrant visa was canceled and she was made to return to Mexico.

When attempting entry into the United States, she admitted to having previously purchased firearms from a licensed dealer in Portland, Texas. Landaverde-Sosa stated that the purchased firearms were being exported into Mexico. She further stated that the transactions were completed utilizing personal identifying information belonging to Brenda Ruiz. She identified a male subject, Leonardo Barroso, as the facilitator of these transactions. She continued, stating that Barroso had an extramarital relationship with a female from Laredo that she knew as Brenda.

Landaverde-Sosa stated that Barroso and the firearms dealer appeared to be close friends based on their interaction and Barroso's behavior at the firearms dealer's house. She stated that Barroso walked into the house and accessed both the restroom and the refrigerator. She also stated that when purchasing the firearms, she was provided a previously filled form with Ruiz's information and she simply copied the information to a blank form and completed the transaction. Moreover, this happened in the presence of the firearms dealer.

Agents conducted a border crossing query and found that Landaverde-Sosa crossed into the United States on February 10 and 11, 2022. Agents confirmed that these crossing dates were consistent with the firearm purchases made on the same dates, late in the evening, at Acme Tactical. Landaverde-Sosa also stated that Barroso was working on making a trip to pick up two firearms that had already been purchased through the firearms

dealer. ATF agents confirmed that on February 27, 2022, Barroso was referred to secondary inspection at an immigration checkpoint near Sarita, Texas.

Based on this information, Agent Guardado attested that he believed that the female who purchased firearms using Ruiz's ID could have been Landaverde-Sosa. He believed that Bruggeman had knowledge that the purchases conducted by Landaverde-Sosa were unlawful and that "the two firearms BRUGGEMAN was intending to transfer was also being done in violation of the Gun Control Act, and that BRUGGEMAN was knowledgeable of the 'straw purchase' attempt." D.E. 40-2, p. 10. He stated, "I believe that probable cause exists, there are additional firearms and evidence of BRUGGEMANS violations at the TARGET RESIDENCE." *Id.* [2]

Guardado also stated that "Agents know individuals who conduct illegal activities including the manufacturing, distribution, and possessing of firearms are known to keep their firearms secured and hidden in their residences." *Id.* The affidavit asserted that there was probable cause to believe that Bruggeman was in violation of:

> 18 U.S.C. § 922 (g)(5)(B): making it unlawful for any nonimmigrant alien to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has shipped or transported in interstate or foreign commerce;

> 18 U.S.C. § 922 (a)(6): making it unlawful for any person in connection with the acquisition or attempted acquisition of any firearm or ammunition from a licensed importer, licensed manufacturer, licensed dealer, or licensed collector, knowingly

---

[2] Agent Guardado never explicitly stated why he believed Bruggeman had knowledge that the purchases were unlawful.

to make any false or fictitious oral or written statement or to furnish or exhibit any false, fictitious, or misrepresented identification, intended or likely to deceive such importer, manufacturer, dealer, or collector with respect to any fact material to the lawfulness of the sale or other disposition of such firearm or ammunition . . . ; and

18 U.S.C. § 554(a):[3] making it unlawful to fraudulently or knowingly export or send from the United States, or attempt to export or send from the United States, any merchandise, article, or object contrary to any law or regulation of the United States, or receive, conceal, buy, sell, or in any manner facilitate the transportation, concealment, or sale of such merchandise, article or object, prior to exportation, knowing the same to be intended for exportation contrary to any law or regulation of the United States.

*Id*. at 2-3.

## II. Warrant and Execution

On March 3, 2022, the magistrate judge issued a search warrant that authorized the search of Bruggeman's residence, including the garage where the Acme Tactical business is located, and the curtilage surrounding the residence. The warrant permitted the Government to seize:

Evidence and records relating to violations of Title 18 U.S.C. § 922 (g)(5)(B), Title 18 U.S.C. § 922 (a)(6), and Title 18 U.S.C. § 5[5]4,[4] those violations involving BRUGGEMAN including:

   a.  Firearms of all caliber and models;

   b.  Silencers;

---

[3]  Agent Guardado testified that the statute number on the affidavit, 18 U.S.C. § 544(a), is a typo; it should read as "18 U.S.C. § 554(a)."

[4]  *Supra* note 3, at 6.

c.  Ammunition of all types and caliber;

d.  Documents related to the purchase, sale, or possession of firearms - records that reflect to the purchase sale, or possession of firearms, such as receipts, ledgers, owner's manuals, warranty cards, correspondence, and other such documents;

e.  Indicia of ownership of the above listed property; records that establish the persons who have control, possession, custody or dominion over the property and vehicles searched and from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, and vehicle registration information or ownership warranties, receipts for vehicle parts and repairs and fingerprints;

f.  Electronic storage devices and equipment, including but not limited to: cellular and wireless telephones, computers, laptops, tablet devices, USB drives, and hard drives or other electronic storage devices associated with and electronic surveillance or security system;

g.  Electronically stored documents, records and information relating to online firearm sales and or purchases;

h.  Evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to crime under investigation and to the computer user;

i.  Evidence of the times the computer was used;

j.  Any and all financial records;

k.  Passwords, encryption keys, and other access devices that may be necessary to access the computer;

l.  Documentation and manuals that may be necessary to access the computer or to conduct a forensic examination of the computer;

m. Records of or information about Internet Protocol addresses used by the computer;

n. Records of or information about the computer's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses;

o. Any and all internet routers;

p. Contextual information necessary to understand the evidence described in this attachment.

D.E. 40-1, pp. 4-5.

Agent Guardado and other agents executed the search warrant on the same day that it was issued. ATF seized several types of evidence, including the six machine guns and three firearm silencers that Bruggeman is charged with unlawfully possessing in this case. D.E. 33; *see* D.E. 43-1. Bruggeman has not been charged, however, with the offenses alleged in the affidavit.

### III. Agent Guardado's Testimony

This investigation started with Agent Jacob Garza at the investigations branch of the ATF. Agent Garza contacted ATF agents in Laredo, Texas, who then brought in Agent Guardado. Prior to the filing of the affidavit, Agent Guardado reviewed the ATF multiple sales report made by "Brenda Ruiz" and the corresponding ATF Form 4473s with her name from the two firearm purchases; he compared the signature on these forms to the signature on her ID prior to signing the affidavit. Because of the investigation by the Laredo agents, he believed that the person who signed these forms was not Brenda Ruiz; otherwise, these forms had no errors.

In filing the Form 4473s, Bruggeman attached the identification card for the buyer, which is not required of licensees but useful for recordkeeping. Bruggeman also ran the required NICS system check for the sale of the firearms in question and was authorized by the FBI to proceed with these sales. Agent Guardado testified that Bruggeman was doing what he was supposed to be doing when he submitted the multiple sales report. Agent Guardado did not investigate any other multiple sales reports generated by Acme Tactical, including any related to this case for the male subject in question, "Juan Sanchez." These forms would have been available to him had he requested them.

While maintaining that it was not relevant to the issue of probable cause and therefore was not included in the affidavit, Agent Guardado knew that—prior to the execution of the warrant—Bruggeman was in contact with Agent Garza and Agent Guardado individually. Agent Guardado acknowledged that Bruggeman fully cooperated with the ATF, including supplying them with the requested Form 4473s and did what ATF asked him to do in regard to contacting the subjects—"Ruiz" and "Sanchez". Prior to filing the affidavit, Agent Guardado did not conduct a background check on Bruggeman, but he also knew generally of Bruggeman's history in law enforcement.

## ARGUMENTS PRESENTED

Bruggeman moves to suppress the evidence obtained through the search warrant on the basis that Agent Guardado's affidavit omitted material information and included misleading statements. He argues that Agent Guardado misled the magistrate judge and that the affidavit did not support a finding of probable cause. He also alleges that the

warrant was overbroad because it included items unrelated to the records relevant to the alleged offenses.

The Government contends that Agent Guardado did not make a material omission with reckless disregard for the truth and that his affidavit truthfully supplied the requisite probable cause to search Bruggeman's business and home. In addition, the Government contends that the warrant was not overbroad and therefore satisfied the requirements of the Fourth Amendment.

## DISCUSSION

### I. Burden of Proof and Rubric

#### A. Probable Cause for Search Warrant

The party seeking suppression "has the burden of proving, by a preponderance of evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Smith,* 978 F.2d 171, 176 (5th Cir. 1992) (citing *Rakas v. Illinois*, 439 U.S. 128, 131 n.1 (1978)).  The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."  U.S. Const. amend. IV.  Specifically, the items to be seized must be described with sufficient particularity so "as to leave 'nothing . . . to the discretion of the officer executing the warrant.'"  *United States v. Allen,* 625 F.3d 830, 835 (5th Cir. 2010) (quoting *Marron v. United States*, 275 U.S. 192, 196 (1927)).  Ordinarily, a search warrant that fails to establish

probable cause or meet the particularity requirement is unconstitutional. *See Allen*, 625 F.3d at 835.

### B. Exclusionary Rule

If the evidence supports a finding of an unconstitutional search, the burden is on the Government to demonstrate why the evidence should not be excluded as fruits of the illegal search or seizure. *United States v. Runyan*, 275 F.3d 449, 456 (5th Cir. 2001) (citing *United States v. Houltin*, 566 F.2d 1027, 1031 (5th Cir. 1978)). One exception to the exclusionary rule applies "when the police act with an objectively reasonable good-faith belief that their conduct is lawful." *Davis v. United States*, 564 U.S. 229, 238 (2011) (citing *United States v. Leon,* 468 U.S. 897, 918 (1984)).

### C. Good Faith Exception

Suppression is not in every instance the appropriate remedy for a violation of constitutional rights. *Leon,* 468 U.S. at 921. Rather, exclusion of evidence is a "last resort, not [the court's] first impulse." *Herring v. United States*, 555 U.S. 135, 140 (2009) (citing *Hudson v. Michigan*, 547 U.S. 586, 591 (2006)). The sole purpose of the exclusionary rule is to deter future Fourth Amendment violations. *Davis*, 564 U.S. at 236–37. For that reason, the "good faith exception bars the application of the exclusionary rule to exclude evidence obtained pursuant to a warrant if law enforcement officers act under an objectively reasonable, good faith belief that the search warrant in question is valid—even if it, in fact, is not." *United States v. Jarman*, 847 F.3d 259, 264 (5th Cir. 2017).

The good faith inquiry asks "whether a reasonably well trained officer would have known that the search was illegal despite the [judge's] authorization." *Allen*, 625 F.3d at 835 (quoting *Leon*, 468 U.S. at 923 n.23) (internal quotation marks omitted). "Whether the exception applies will ordinarily depend on an examination of the affidavit by the reviewing court . . . but all of the circumstances surrounding issuance of the warrant may be considered." *United States v. Payne*, 341 F.3d 393, 400 (5th Cir. 2003) (internal citations omitted).

Typically, the Fifth Circuit conducts a two-step review of a motion to suppress evidence seized pursuant to a warrant. *United States v. Massi*, 761 F.3d 512, 525 (5th Cir. 2014). First, the court considers whether the good faith exception applies. If it does, "the court need not reach the question of probable cause." *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997); *see also United States v. Moore*, 805 F.3d 590, 593 (5th Cir. 2015) ("Our analysis usually ends if the good faith exception applies."). If the good faith exception does not apply, the second step "requires the court 'to ensure that the magistrate had a substantial basis for . . . concluding that probable cause existed.'" *Massi*, 761 F.3d at 525 (quoting *Pena-Rodriguez*, 110 F.3d at 1129).

The good faith exception does not apply in the following circumstances:

> (1) when the issuing magistrate was misled by information in an affidavit that the affiant knew or reasonably should have known was false; (2) when the issuing magistrate wholly abandoned his judicial role; (3) when the warrant affidavit is so lacking in indicia of probable cause as to render official belief in its existence unreasonable; and (4) when the warrant is so facially deficient in failing to particularize the place to be

> searched or the things to be seized that executing officers
> cannot reasonably presume it to be valid.

*United States v. Woerner*, 709 F.3d 527, 533-34 (5th Cir. 2013) (citing *Payne*, 341 F.3d at

399-400).  Only the first exception is at issue here.

In that respect, "The good-faith exception to the exclusionary rule does not apply if

the warrant affidavit contains a false statement that was made intentionally or with reckless

disregard for its truth."  *United States v. Cavazos*, 288 F.3d 706, 709-10 (5th Cir. 2002).

"[T]he defendant must establish: (1) a knowing or reckless falsehood by omission or

commission; (2) that without the falsehood there would not be sufficient matter in the

affidavit to support the issuance of the warrant; and that (3) [t]he omitted material [is] . . .

dispositive, so that if the omitted fact were included, there would not be probable cause."

*Jarman*, 847 F.3d at 264-65 (internal quotation marks and citations omitted); *see Franks*,

438 U.S. at 156.  "[A] statement or omission's materiality, or lack thereof, has bearing on

whether the affiant was reckless." *United States v. Ortega*, 719 F. App'x 319, 325 (5th Cir.

2018). And an affiant's "failure to disclose facts underlying conclusory statements in his

affidavit is a factor favoring recklessness." *Id.*

## II. Analysis

### A. The Good Faith Exception Applies

#### 1. The Face of the Affidavit

It is undisputed that, as set out more fully above, it is unlawful for a person to:  (a)

buy or possess a firearm as a nonimmigrant alien; (b) buy a firearm in a false name; or (c)

purchase a firearm for exportation to another country.  *See* 18 U.S.C. §§ 554(a), 922 (a)(6);

922 (g)(5)(B).  It is further undisputed that, as Agent Guardado set out in his affidavit, the ATF investigation of multiple sales reports filed by Bruggeman uncovered some evidence that:  (a) Brenda Ruiz's identification was being used by another person to purchase firearms from Bruggeman; (b) that the person fictitiously using Brenda Ruiz's identification was not conversant in English and completed the paperwork in the presence of Bruggeman by copying filled-out forms provided to her by a third person she referred to as her "boss;" (c) that the "boss" seemed to be familiar and friendly with Bruggeman; (d) that the person ordering a firearm under the name of Brenda Ruiz represented to Bruggeman that a different person would take delivery of the weapon and that Bruggeman was willing to place the order on that basis; and (e) that the firearms purchased in the name of Brenda Ruiz were purchased for the purpose of export to Mexico.

Bruggeman questions the agents' reliance on this information, which was provided by Brenda Ruiz and the person allegedly using her identification (Viridiana Landaverde-Sosa) because they admitted to being, or might have been, involved in the criminal behavior at issue.  But Bruggeman has not submitted any evidence that the statements they made were unreliable, that the agents had reason to believe they were not reliable under the circumstances, or that as a matter of law they could not be given credence as part of an investigation into criminal activity.  Rather, the information gathered in the investigation amounted to probable cause to believe that crimes had taken place or were taking place using Bruggeman's business as a firearms dealer.

Given that the purchases were made from Bruggeman at his business, a search of that business and the residence of which it was a part, was appropriate, whether or not he was suspected of knowingly participating in the alleged criminal activity. While the affidavit states Agent Guardado's belief that Bruggeman was engaged in the alleged crimes, such a belief is not essential to a finding of probable cause to search premises where some crime was believed to be afoot at that location.

> The [Fourth Amendment's] Warrant Clause speaks of search warrants issued on "probable cause" and "particularly describing the place to be searched, and the persons or things to be seized." In situations where the State does not seek to seize "persons" but only those "things" which there is probable cause to believe are located on the place to be searched, there is no apparent basis in the language of the Amendment for also imposing the requirements for a valid arrest—probable cause to believe that the third party is implicated in the crime.

*Zurcher v. Stanford Daily*, 436 U.S. 547, 554 (1978).

An affidavit for a search warrant is to be interpreted in a "common sense and realistic manner," and the judge's finding of probable cause should be sustained in "doubtful or marginal cases." *United States v. Freeman*, 685 F.2d 942, 948 (5th Cir. 1982) (citing *United States v. Maestas*, 546 F.2d 1177, 1180 (5th Cir. 1977)). Nothing on the face of the affidavit calls these conclusions into question. Therefore, a reasonable law enforcement officer could, in good faith, rely on the warrant's finding of probable cause to search the premises, making any fruits of the search admissible in evidence.

### 2.  Alleged Intentionally False or Reckless Omissions

On this record, then, the fruits of the search would be inadmissible only if the information on the face of the affidavit was misleading because of the intentional or reckless omission of material information or statement of false information.  Bruggeman asserts in his motion that the affidavit misled the magistrate judge in a number of ways. *See* D.E. 40, pp. 2, 9-12.  These assertions are addressed below by type.

**Collateral Character Issues**.  The majority of Bruggeman's complaints assert that Guardado should have advised the judge of factual issues that would have portrayed Bruggeman in a favorable light and/or that Guardado's initial investigation was incomplete and should have included such character issues.  He specifically complains of the following omissions:

> (1)   Bruggeman maintained meticulous records of his firearms sales and transfers, including keeping copies of his background checks and IDs used to purchase firearms, which was more than what was required of him as a licensed firearms dealer;
>
> (2)   in connection with the sales to the individuals, Bruggeman filed the required information about the individuals to the FBI-maintained NCIS system for background checks on the buyers;
>
> (3)   before the sales were consummated, Bruggeman received from the Government system the required electronic notification to "proceed";
>
> (4)   Bruggeman also filed the required ATF eform 3310.4 reporting "multiple sales" with the description of the firearms sold (a report done without the knowledge of the buyers) and that such form alerted ATF agents, as indicated in the affidavit, to further investigate the transactions;

17 / 31

(5)    Bruggeman gave open and willing cooperation with agents who came to him for assistance while investigating the alleged "straw purchases"; and

(6)    if Agent Guardado had done a simple background check on Bruggeman, it would have revealed—and he should have included—his favorable military and law enforcement background.

D.E. 40, pp. 2, 9-12.  Bruggeman has not supplied any authority for the proposition that a probable cause affidavit is misleading if it fails to include collateral or background information that a subject of the investigation—or third-party owner of premises to be searched—has otherwise conducted himself in a lawful or exemplary manner.

As noted above, the only question is whether the omitted facts would have directly negated issues supporting probable cause that a crime has been committed.  *Jarman*, 847 F.3d at 264-65.  The omissions of which Bruggeman complains—character issues—are not exculpatory and do not negate the probability that a crime has been committed in relationship to the business operated on his premises.  Even information that contradicts the information relied on for probable cause need not be included if there is sufficient independent evidence that supports it.  *See Porter v. Lear*, 751 F. App'x 422, 430 (5th Cir. 2018) (exculpatory information must be "clearly critical" to the finding of probable cause to be considered unreasonably omitted and subject to a finding that the omission was intentionally or recklessly misleading).

Even if the information were exculpatory from the point of view of Bruggeman's guilt of the crimes set out in the affidavit, Bruggeman has offered no evidence to address the guilt of the other persons involved in the subject transactions.  As noted, probable cause

as to Bruggeman's commission of a crime is not necessary for a search of his premises. For that reason, the first six alleged omissions are immaterial and the Court rejects the argument that they were intentional or reckless omissions that defeat the good faith exception.

**Persons Involved in the Pending Transaction**. Bruggeman complains that Agent Guardado omitted Bruggeman's apparent compliance with all laws regarding the transaction that was pending at the time the ATF agents approached him with their investigation. And the failure to identify the "unknown persons" allegedly involved with Bruggeman created inaccurate impressions of his complicity in their nefarious plans. More specifically, the alleged material omissions are:

> (7) "Bruggeman told the agents that he had advised the buyers that, once the firearms arrived, each of them would have to come to the shop and do the transfer paperwork for each firearm to the individual receiving it;" and
>
> (8) the alleged straw purchasers were identified as "unknown persons," giving the impression that Bruggeman was a criminal ringleader, when they already knew the identity of those persons.

D.E. 40, pp. 2, 9-12.

Whether Bruggeman was in strict compliance with the law once he was aware that he was under law enforcement surveillance is not the issue. Once again, there was information of prior violations taking place involving other persons with the use of Bruggeman's business, whether or not he was criminally complicit. And whether Bruggeman intended to comply with the law and properly informed his buyers about how they were going to have to take delivery, the buyers did not show up to do this legal

paperwork, which is consistent with the alleged expectation that they did not intend to comply with the law.  Thus, Bruggeman's stated intention of compliance is not relevant to the probable cause necessary to support the search of his business regarding crimes committed by others.

Neither is it necessary to identify "unknown persons" by name at every turn so as to avoid an adverse impression.  The "unknown persons" were sufficiently identified—to the extent known—when reading the affidavit as a whole.  And the information the agents had accumulated indicated that others may have been involved in taking delivery of the firearms immediately from Bruggeman or later as part of their crossing the border into Mexico.  Again, whether Bruggeman was considered to have engaged in conduct for which he could be held criminally liable was not a necessary finding to search his premises.  The Court rejects the materiality of the seventh and eighth omissions to defeat a finding of good faith reliance on the warrant.

**Legal Issues**.  Bruggeman complains of the following legal issues in Guardado's affidavit:

> (9)   he misrepresented the definition of a "straw purchase"; and
>
> (10)  he "believed" Bruggeman was complicit in the alleged crimes.

D.E. 40, pp. 7, 11.  Guardado's affidavit states, "Agents know that purchasing firearms on behalf of someone or with the intent of transferring to another individual (straw purchase) is a violation of the Gun Control Act."  D.E. 40-2, p. 6.  Bruggeman argues that the

definition is false because, according to ATF, a "straw purchase occurs when the actual

buyer uses another person ("straw purchaser") to execute the Form 4473 purporting to

show that the straw purchaser is the actual purchaser of the firearm." D.E. 40, p. 11.

First, Bruggeman does not offer any authority for the proposition that a mistake in,

or incomplete representation of, a legal definition of a crime is a misrepresentation of the

type that qualifies for relief from the admissibility of fruits of a search warrant. And this

Court has found no such authority. To the contrary, two of our sister courts have consider

the issue and held that relevant misrepresentations or omissions must be of fact, not law.

> The question before the Court in *Franks* was whether a
> criminal defendant "ever has the right ... to challenge the
> truthfulness of factual statements made in an affidavit
> supporting the warrant?" Dr. Barnes has not identified any
> cases extending *Franks* to misstatements of law. Instead, the
> Court's research indicates the relevant inquiry is whether the
> warrant affidavit contains false statements of fact. That no
> other court has applied *Franks* to misstatements of law is a
> strong reason for declining to do so in this case.
>
> There is an equally compelling policy argument for refusing to
> extend *Franks*. As the Supreme Court recognized over 50
> years ago, "affidavits for search warrants .... are normally
> drafted by nonlawyers in the midst and haste of a criminal
> investigation." As an officer untrained in the law, S.A.
> Bradford cannot reasonably be expected to understand the
> nuances of the law, especially the "maze of Medicare
> regulations"—as Dr. Barnes described them—at issue in this
> case. In this situation, the officer's sole responsibility is to
> attest to facts within his or her personal knowledge. The
> determination of whether those facts support a finding of
> probable cause is committed exclusively to the magistrate
> judge, who is "presumed to know the law and to apply it in
> making her decision." Thus, it would be both unreasonable
> and unnecessary to expect officers to educate magistrate judges
> on the law applicable to a probable cause determination.

*United States v. Barnes*, 126 F. Supp. 3d 735, 740–41 (E.D. La. 2015) (footnotes omitted; cleaned up) (citing *Lambrix v. Singletary*, 520 U.S. 518, 532 n.4 (1997) (trial judges are presumed to know the law and to apply it in making their decisions)); *United States v. Tabares*, No. 115CR00277SCJJFK, 2016 WL 11258758, at *19 (N.D. Ga. June 3, 2016) (following *Barnes*), report and recommendation adopted, No. 1:15-CR-0277-SCJ-JFK, 2017 WL 1944199 (N.D. Ga. May 10, 2017).

Second, the affidavit's legal description is not actually or substantially incorrect or misleading as applied in this case. The information supplied is that Landaverde-Sosa filled out Form 4473 in the fictitious name of Brenda Ruiz, allegedly with the expectation that a person by the name of Sanchez would be the one to take delivery. If, as Bruggeman asserts, he was planning only to transfer the firearm to the purchaser as he knew her, Landaverde-Sosa, a violation would still have taken place because the transferee would not be Brenda Ruiz (the Form 4473-named individual) under any scenario offered in this case. It would be Landaverde-Sosa or Sanchez who planned to take delivery. Had the delivery taken place, it would have been a completed straw purchase.

Bruggeman emphasizes that the delivery never did take place, so there was no completed straw purchase. Agent Guardado responded that that was why he described the conduct as an "attempted" straw purchase. D.E. 40-2, ¶¶ 4, 35; D.E. 54, p. 30. The Supreme Court has written that it

> repeatedly has explained that "probable cause" to justify an
> arrest means facts and circumstances within the officer's
> knowledge that are sufficient to warrant a prudent person, or
> one of reasonable caution, in believing, in the circumstances

shown, that the suspect has committed, is committing, or is
**about to commit** an offense.

*Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979) (emphasis added).

For the same reason, the Court rejects the argument that Agent Guardado's affidavit was insufficient because it contains "I believe" statements with respect to Bruggeman's guilt.[5] Bruggeman argues that a belief might constitute a suspicion, but does not rise to the level of probable cause. D.E. 40, p. 12. But whether probable cause exists after false or misleading statements are excised and material omissions are included is a question of law. *Davis v. Hodgkiss*, 11 F.4th 329, 334 (5th Cir. 2021), *cert. denied*, 142 S. Ct. 1127 (2022). Without reference to Agent Guardado's belief statements, the undisputed facts set out in the affidavit are sufficient to arrive at the legal conclusion that probable cause existed to search Bruggeman's premises.

The Court rejects Bruggeman's ninth and tenth complaints regarding any legal definition or belief statement as it pertains to the legal conclusion that probable cause existed.

**Quality of Source**. Bruggeman complains that Agent Guardado should have disclosed information that one source of information should be viewed with skepticism:

> (11) the affidavit omits the conflict in Brenda Ruiz's story regarding the loss of her identification and fails to state whether Ruiz was investigated for any criminal involvement in the firearm purchases.

---

[5] As already discussed, Bruggeman's guilt is not material to the question of probable cause to search his premises.

D.E. 40, pp. 11-12.

This argument seeks the inclusion of additional information in the affidavit that would support finding that criminal activity was taking place at Bruggeman's place of business with another person, Ruiz, complicit in it. Bruggeman does not demonstrate how the calculus of probable cause to search the premises changes if Ruiz allowed the others to use her ID instead of having lost it. Either way, it was being used fictitiously.

Whether Ruiz was complicit in any criminal scheme does not change the nature of the crime. Nor does it necessarily change whether Bruggeman had any knowledge of the fictitious use of the ID. And, as set out above, whether Bruggeman was guilty of participating in the crime being investigated does not change law enforcement's probable cause to search his premises.

There was sufficient corroborating information that Landaverde-Sosa and others were using Brenda Ruiz's ID (with or without her knowledge and consent) to obtain firearms in her name for their own purposes. Bruggeman has not met his burden of proof to show that including this information about Brenda Ruiz would have defeated the probable cause finding. The Court rejects the eleventh complaint challenging the affidavit's support of probable cause.

**Signature Representations**. Bruggeman complains that the affidavit discusses the Laredo agents' observations about "several discrepancies" in Brenda Ruiz's signature between Form 4473 and the signature she wrote for them in person. D.E. 40-2. While there may have been such discrepancies, Agent Guardado did not discuss that:

> (12) the signature on the identification and the signature affixed to the ATF Form 4473 were substantially similar so that a reasonable person would not doubt their authenticity.

D.E. 56, p. 1. That comparison is illustrated here:



Form 4473 Signature from February 10, 2022, Defense Exhibit 5.



Brenda Ruiz Identification Card Signature, Defense Exhibit 5.

Agent Guardado testified that he had looked at the signature from Form 4473 and compared it to Ruiz's ID.[6] *Id.* at 83-84. But he failed to present that comparison to the magistrate judge, opting only to address the Laredo agents' findings.

The Court is deeply concerned that the agent included testimony about a signature comparison that was not a part of the transaction while omitting any testimony regarding—or even setting out for the magistrate judge's own comparison—the signatures that were part of the transaction. Agent Guardado offered this selective signature testimony in a way

---

[6] Agent Guardado's testimony here is not clear as to whether he believes that the signature on Form 4473 and on Ruiz's ID look the same. He was asked, "So is it your testimony that you believe that those signatures are substantially the same or are they different? And you're not a handwriting expert, are you?" and he replied, "Correct. I'm not." D.E. 53, p. 84. Then when asked, "…looking at them now, do they seem much different to you? They're pretty close, aren't they?" He replied, "Again, I'm not an expert. However, I know that Brenda Ruiz – the real Brenda Ruiz made a statement to the agents that that was not her signature." *Id.*

that was calculated to support a probable cause conclusion that Bruggeman knew that he was participating in a straw purchase.

If Bruggeman's own probable guilt of a crime were a necessary prerequisite to this search warrant, this omission may have been enough to eliminate the good faith exception and, perhaps, probable cause. But because—as described above—the warrant was only to search the premises and not to seize his person in an arrest, Bruggeman's alleged guilt is not a necessary part of the probable cause decision. Therefore, this omission is not material and Bruggeman's twelfth argument is rejected.

**Court's Caution**. While the Court has rejected all of the arguments that Agent Guardado intentionally or recklessly misled the magistrate judge in a manner material to the required probable cause finding for a search warrant, it is clear to this Court that the affidavit was overreaching. Agent Guardado sought to convince the magistrate judge of Bruggeman's probable guilt of participating in a straw purchase or otherwise selling firearms to those prohibited by law to buy, own, or export them. In doing so, he came very close to the line—if not crossed it—in representing the strength of the information uncovered in the investigation as to Bruggeman's complicity.

The comparison signature evidence, in particular, represented that Bruggeman knew that Brenda Ruiz's identification was being used fictitiously. The Court disapproves of such a distorted picture of a critical issue being presented to a magistrate judge for a probable cause finding. While the Court expects zealous law enforcement investigations, agents must remain cognizant of the dangers of selecting the information presented in a

manner that misrepresents the force of the known evidence or the strength of its source, which could mislead the magistrate judge in finding probable cause. Considering that the remedy is exclusion of evidence resulting from a search and seizure, agents are well-advised to be more circumspect in the formulation of their probable cause affidavits.

### 3. Conclusion

Because the face of the affidavit supported a reasonable officer's conclusion that the search warrant was based on probable cause and because Bruggeman failed to satisfy his burden to show that the affidavit involved intentional or reckless misrepresentations or omissions that were material to the probable cause decision, the Court holds that the good faith exception applies. The Fourth Amendment does not require exclusion of the fruits of the search even if the Court were to find that probable cause was lacking. *Pena-Rodriguez*, 110 F.3d at 1130. Therefore, the Court need not, and does not, further address the probable cause analysis.

### B. Particularity Requirement

A search warrant must particularly describe the place to be searched and the people or things to be seized. U.S. Const. amend. IV. The validity of the search warrant must be assessed on the basis of the information that the officers disclosed, or had a duty to discover and to disclose, to the issuing magistrate. *Maryland v. Garrison*, 480 U.S. 79, 85(1987). "The scope of the seizure depends on the scope of the suspected crime" and a search warrant application must show that "probable cause exist[s] to justify listing those items as

potential evidence subject to seizure." *United States v. Sanjar*, 876 F.3d 725, 735-36 (5th Cir. 2017) (citations omitted).

Bruggeman claims that the warrant is overbroad and that the only items that would be relevant to the alleged crimes were the documents of the type required to be maintained by a firearms dealer reflecting the purchase, sale, or possession of firearms. D.E. 56, pp. 13-14.[7] The Government argues that the scope of the warrant was within the boundaries of the Fourth Amendment. D.E. 44, pp. 12-14.

**Firearms.** The warrant permitted the seizure of firearms of all caliber and models; silencers; and ammunition of all types and caliber. D.E. 40-1, p. 4, ¶¶ a-c. All of the alleged offenses involve the illegal possession, sale, or transport of firearms and ammunition. *See* 18 U.S.C. § 922 (g)(5)(B); 18 U.S.C. § 922 (a)(6): 18 U.S.C. § 554(a). And the definition of a firearm under the Gun Control Act includes silencers. 18 U.S.C. § 921(a)(3) ("The term "firearm" means (A) any weapon (including a starter gun) which will or is designed to or may readily be converted to expel a projectile by the action of an explosive; (B) the frame or receiver of any such weapon; (C) ***any firearm muffler or firearm silencer;*** or (D) any destructive device.") (emphasis added). In addition, while agents were interviewing

---

[7] Bruggeman also argues that no search warrant was necessary for the Government to obtain these records because he was required to make them available by law. D.E. 61, pp. 1-2; *see* 18 U.S.C. 923(g)(1)(B) (iii) ("The Attorney General may inspect or examine the inventory and records of a licensed importer, licensed manufacturer, or licensed dealer without such reasonable cause or warrant…when such inspection or examination may be required for determining the disposition of one or more particular firearms in the course of a bona fide criminal investigation.") Whether there were less intrusive means available to obtain the same evidence is not a consideration under the Fourth Amendment. *Zurcher*, 436 U.S. at 559 (explaining that the Fourth Amendment has struck the balance between privacy and public need and that there is no need to evaluate whether another means of getting the same evidence would be less intrusive than a search warrant).

Bruggeman, he received a package with the firearms that were purchased in this case. D.E. 40-2, p. 6.[8] This is sufficient to support probable cause to seize these items.[9]

**Electronic Evidence and Devices.** The warrant also permitted the seizure of electronic devices, including storage devices, telephones, computers, tablet devices, and also electronically stored documents and evidence related to the use of the computer. D.E. 40-1, pp. 4-5, ¶¶ f, i, k, m, n, o. Bruggeman submitted the multiple sales report to ATF electronically and had a website for Acme Tactical. And Bruggeman used his cell phone to communicate with the agent and the other subjects of the investigation. D.E. 40-2, p. 6; Defense Exhibits 13, 14. This is sufficient to support probable cause to seize the electronic evidence requested in the warrant.[10]

**Remaining Provisions.** The warrant also permitted the seizure of evidence and records regarding:

> e. Indicia of ownership of the above listed property; records that establish the persons who have control, possession, custody or dominion over the property and vehicles searched and from which evidence is seized, such as: personal mail, checkbooks, personal identification, notes, other

---

[8] Agent Guardado testified that he included silencers in the warrant because when they went to interview Bruggeman during the investigation, he saw what appeared to be silencers. However, this information was not included in the affidavit and therefore will not be considered in the determination of probable cause. *See* D.E. 54, p. 59; D.E. 40-2.

[9] To the extent that Bruggeman argues that the boilerplate language in the affidavit that "Agents know individuals who conduct illegal activities including the manufacturing, distribution, and possessing of firearms are known to keep their firearms secured and hidden in their residences," D.E. 40-2, pp. 10-11, is insufficient alone to support the seizure of his firearms, the Court agrees. *See United States v. Solorio-Hernandez*, No. 5:15-CR-156-3, 2015 U.S. Dist. LEXIS 72904, at *11 (S.D. Tex. 2015) ("The Fifth Circuit has cautioned that this reasoning, which essentially relies on the boilerplate assertions to establish the nexus, may be insufficient to establish an agent's good-faith reliance on a warrant."). However, as stated, there is sufficient connection here to the firearms outside of this boilerplate assertion.

[10] The Government also argued that there were 18 additional search warrants executed for the electronic devices in this case. D.E. 44, p. 13. However, these warrants are not before the Court and will not be considered in determining the validity of the present warrant.

correspondence, utility bills, rent receipts, payment receipts, financial documents, keys, photographs (developed or undeveloped), leases, mortgage bills, and vehicle registration information or ownership warranties, receipts for vehicle parts and repairs and fingerprints; . . .

j. Any and all financial records[.]

D.E. 40-1, pp. 4-5. "Warrants that authorize an 'all records' search require 'much closer scrutiny' under the Fourth Amendment and are only upheld in 'extreme cases' where the alleged crime is pervasive, closely intertwined with the place to be searched, and the items to be seized are sufficiently limited and linked to the alleged crime." *United States v. Opoku*, 556 F. Supp. 3d 633, 642 (S.D. Tex. 2021) (citing *United States v. Humphrey*, 104 F.3d 65, 69 (5th Cir. 1997)).

The alleged crimes in this case are not pervasive enough to support broad seizures. *See, e.g., Sanjar*, 876 F.3d at 736 ("If the evidence presented to the magistrate provided probable cause of fraud limited to a particular patient or group of patients, the resulting warrant authorizing seizure of all of [defendant]'s patient files would be problematic. But the magistrate's authorization to seize all of [defendant]'s patient files was supported by evidence of pervasive fraud . . . ."). And the items listed in these provisions, including Bruggeman's utility bills, leases, vehicle registration, and all financial records, have no connection to the alleged crimes; the Court finds that these provisions are therefore overbroad.

"For a failure of particularity, 'the appropriate remedy is for the court to exclude from the evidence in a later criminal action the items improperly taken.'" *United States v.*

30 / 31

*Aguirre*, 664 F.3d 606, 614 (5th Cir. 2011) (citing *United States v. Cook*, 657 F.2d 730, 734 (5th Cir. 1981)). Any evidence improperly taken as a result of the inclusion of these overbroad provisions is therefore suppressed and will be excluded.

## CONCLUSION

The Court finds that the good faith exception applies and the search of Bruggeman's business and attached residence was properly supported by the search warrant. However, the Court finds that provisions e. and j. of the warrant are overbroad. Defendant's motion to suppress (D.E. 40) is therefore **GRANTED in part.** All evidence related to these provisions will be suppressed. Otherwise, the motion to suppress is **DENIED**.

**ORDERED** on September 22, 2023.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE