Case 2:22-cr-00185   Document 84   Filed on 01/16/25 in TXSD   Page 1 of 9

United States District Court
Southern District of Texas
**ENTERED**
January 17, 2025
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| VS. § | CRIMINAL ACTION NO. 2:22-CR-185 |
| § | |
| TERRENCE JAMES BRUGGEMAN § | |

## ORDER ON DEFENDANT'S MOTION TO DISMISS COUNT ONE

Defendant Terrance James Bruggeman is charged in Count One of the second superseding indictment with possession of a "machinegun" in violation of 18 U.S.C. § 922(o). D.E. 33. Before the Court is Bruggeman's motion to dismiss count one, the Government's response, and Bruggeman's reply. D.E. 72, 82, 83. For the reasons discussed below, the Court **GRANTS** Bruggeman's motion to dismiss count one.

### BACKGROUND

The events of this case have been detailed extensively before. *See* D.E. 66. In summary, on March 3, 2022, agents from the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") obtained and executed a warrant to search Bruggeman's residence. D.E. 1, p. 1. Law enforcement seized several firearms, rounds of ammunition, and other items. *Id*. Among the items seized were five AR triggers, described as Rare Breed Triggers FRT-15 ("FRT-15"), without serial numbers. *Id*. Among other charges, Bruggeman has been charged with one count of unlawful possession of a machinegun—six FRT-15s—in violation of 18 U.S.C § 922(o) and § 924(a)(2).

Bruggeman seeks dismissal of this count because: (1) the FRT-15s are not "machineguns" as defined by § 5845(b); (2) the rule of lenity should apply to eliminate the count because of statutory ambiguity, contradictions in regulatory enforcement, and disagreement in the courts; (3) he is the victim of unlawful selective enforcement; and (4) he was deprived of fair notice due to the combined effect of the aforementioned ambiguity and selective enforcement. D.E. 72.

## STANDARD OF REVIEW

When evaluating the sufficiency of an indictment, the court ensures that it (1) enumerates each prima facie element of the charged offense, (2) notifies the defendant of the charges filed against him, and (3) provides the defendant with a double jeopardy defense against future prosecutions. *United States v. Suarez*, 966 F.3d 376, 382 (5th Cir. 2020) (*citing and quoting United States v. Nevers*, 7 F.3d 59, 62 (5th Cir. 1993)). In the Fifth Circuit, "the propriety of granting a motion to dismiss an indictment . . . is by-and-large contingent upon whether the infirmity in the prosecution is essentially one of law or involves determinations of fact. If a question of law is involved, then consideration of the motion is generally proper." *United States v. Flores*, 404 F.3d 320, 324 (5th Cir. 2005) (*citing United States v. Korn*, 557 F.2d 1089, 1090 (5th Cir. 1977)) (internal quotations omitted).

The Government argues that the "only applicable analysis in examining a motion to dismiss the indictment is whether the indictment contains sufficient factual allegations." D.E. 82, pp. 3-4. Arguing that the indictment here does so, the Government contends that

Bruggeman's motion should be denied. D.E. 82, p. 3. To the contrary, however, Bruggeman's challenges—in part—address a matter of statutory interpretation as to the definition of machineguns, which is a question of law. As such, they are the province of the courts to determine. *Khanh Nhat Thuy Le v. Holder*, 732 F.3d 425, 427 (5th Cir. 2013); *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 395 (2024).[1]

## DISCUSSION

### I.    Whether the FRT-15 is a "Machinegun"

#### A. Statutory Language

The Gun Control Act of 1968 makes it "unlawful for any person to transfer or possess a machinegun." 18 U.S.C § 922(o).[2] The term "machinegun" is defined as:

> any weapon which shoots, is designed to shoot, or can be readily restored to shoot, automatically ***more than one shot, without manual reloading, by a single function of the trigger***. The term shall also include the frame or receiver of any such weapon, any part designed and intended solely and exclusively, or combination of parts designed and intended, for use in converting a weapon into a machinegun, and any combination of parts from which a machinegun can be assembled if such parts are in the possession or under the control of a person.

---

[1] The Government contends that the issues Bruggeman presents are fact questions that should be resolved at trial. The cases the Government cites are not applicable here. In *United States v. Berrios-Aquino*, there was a question of fact about *how* the trigger worked. No. CR 22-00473 (GMM), 2024 WL 1468488, at *3 (D.P.R. Apr. 4, 2024). The court noted, "*at this juncture*, [defendant's] arguments regarding whether the seized triggers qualify as machineguns under the law is not up for consideration." *Id.* (emphasis added). Notably, the fact question had to be resolved first by a jury. That fact question has since been resolved. For the same reason, *United States v. Hoover*, 635 F. Supp. 3d 1305 (M.D. Fla. 2022), is distinguishable. The parties here do not present any fact issue with respect to how the FRT-15s operate.

[2] This provision is subject to certain exceptions which are not at issue in the present case.

National Firearms Act, 26 U.S.C. § 5845(b) (emphasis added). This definition has been, and continues to be, litigated in the Fifth Circuit. And the Supreme Court issued an important ruling on June 14, 2024. This Court starts its discussion there.

### B. *Garland v Cargill*

The Supreme Court last addressed the machinegun definition in *Garland v Cargill*, 602 U.S. 406 (2024), in the context of nonmechanical bump stocks. It held that, "If something more than a 'single function of the trigger' is required to fire multiple shots, the weapon does not satisfy the statutory definition." *Cargill*, 602 U.S. at 424. Affirming the Fifth Circuit's analysis,[3] the Court held that "a single function of the trigger" does not depend on the shooter's conscious decision to hold down the trigger, but focuses on the trigger-hammer interface and the mechanical operation of the firing cycle. According to the Supreme Court, a nonmechanical bump stock requires the shooter to "release and reset the trigger between every shot," even though the shooter takes no conscious action with the operative trigger finger, which can be held stationary. *Id.* at 415.

However, the reasoning appeared to be nuanced in that it took into consideration other shooter operations that contributed to the initiation of the trigger and firing cycle. While the bump stock facilitates and accelerates multiple shots, it does not fire automatically. In the Supreme Court's view, the weapon's recoil and the shooter's skill in balancing the weapon to take advantage of that recoil to reset the trigger with the help of the bump stock are "something more," preventing nonmechanical bump stocks from

---

[3] *Cargill v. Garland*, 57 F.4th 447 (5th Cir. 2023) (en banc).

qualifying as machineguns. *Id.* at 424 ("If something more than a 'single function of the trigger' is required to fire multiple shots, the weapon does not satisfy the statutory definition."). This Court's analysis of FRTs must account for this construction of the machinegun definition.

### C. *National Association for Gun Rights., Inc. v. Garland*

In July 2024, our sister court in the Northern District of Texas found itself in the same position as this Court does now. Applying *Cargill*, it held on cross-motions for summary judgment that FRT-15s are not machineguns. *Nat'l Ass'n for Gun Rts., Inc. v. Garland*, No. 4:23-CV-00830-O, 2024 WL 3517504, at *14 (N.D. Tex. July 23, 2024) [hereinafter *NAGR*]. The court held that the Supreme Court's reasoning in *Cargill*, which affirmed the Fifth Circuit's conclusion that nonmechanical bump stocks did not qualify as machineguns, is dispositive of the treatment of FRTs.

According to *NAGR*, "For purposes of statutory interpretation, it matters not what human input is required to activate the trigger. All that matters is whether more than one shot is fired each time the trigger functions. As *Cargill* explained, courts cannot look to the shooter's actions in deciding whether FRTs are machineguns." *Id.* at *19. After considering the mechanical operation of FRTs, the *NAGR* court concluded, "triggers in FRT-equipped firearms perform the same mechanical function as any normal trigger by releasing the hammer prior to each shot." *Id*. at *21. Consequently, the machinegun definition—which involves more than one shot to result from each function of the trigger—excludes FRTs.

The Government's appeal of that decision is pending in the Fifth Circuit as *National Ass'n for Gun Rights, Inc. v. Garland,* No. 24-10707 (5th Cir. docketed Aug. 6, 2024). The appeal has been briefed and argued but has not yet been decided.

### D. *United States v. Rare Breed Triggers, LLC*

Prior to the Supreme Court's *Cargill* opinion, the Eastern District of New York came to the opposite conclusion with respect to FRTs. In *United States v. Rare Breed Triggers, LLC*, that court held that "a single function of the trigger" referred to a single pull by the operator. 690 F. Supp. 3d 51, 77 (E.D.N.Y. 2023) (*citing Staples v. United States*, 511 U.S. 600 (1994), for the proposition that "function" is synonymous with "pull"). So the undisputed fact that the weapon continued to shoot multiple rounds as a result of continuous pressure after the initial pull was sufficient to render it a machinegun under the statutory definition. *Id.* at *83-84.

The defendant in *Rare Breed* argued that the *Staples* language was dicta in a footnote and was not binding. But the court found that the language was—at least—to be treated as persuasive. Moreover, treating a "pull" as the "function" of the trigger was not only consistent with a plain language analysis and legislative history, but prevented easy evasion of the intent of the statute. *Id.* at *80-83. And the court so held, despite acknowledging the fact that the trigger mechanism moved forward against the operator's rearward pressure to allow the weapon to reset, load a new cartridge into the chamber, and fire the next single shot without the shooter actually releasing the trigger. *Id.* at *88.

In so holding, the *Rare Breed* court distinguished the Fifth Circuit's January 2023 opinion in *Cargill*, 57 F.4th 447, treating it as an outlier among courts that have evaluated bump stocks as machineguns. *Rare Breed*, 690 F. Supp. 3d at *85 n.26. However, as set out above, the Supreme Court has since affirmed the Fifth Circuit's analysis in *Cargill*, making it the mainstream reasoning. *Rare Breed* has been appealed to the Second Circuit, where it has been briefed and argued and remains pending. *United States v. Rare Breed Triggers, LLC*, No. 23-7276 (2nd Cir. filed Oct. 5, 2023).

### E. Analysis

The record before this Court offers nothing new or different from how the *NAGR* opinion described the way in which FRTs operate.

> For each and every round fired, the trigger moves forward into its reset state and is depressed to release the hammer from its sear surface. Because the operative mechanical function of the trigger is to release the hammer, that the trigger of an FRT-equipped firearm functions for each shot fired disqualifies it as a machinegun under the current statutory definition.

*NAGR*, 2024 WL 3517504, at *19.

> In a hammer-fired gun like those an FRT enhances, the trigger's function is to release the hammer as part of a "simple mechanical process." By disengaging the hammer from the sear, the trigger in FRTs still initiates the "process" that "happens every single time one bullet is fired."
>
> . . .
>
> To be sure, the initial trigger pull sets off a sequence that enables a weapon to continue firing without additional physical manipulation. But, as *Cargill* makes clear, "Congress did not write a statutory definition . . . keyed to when a firing sequence begins and ends." Instead, the statutory definition hinges on the

> trigger's operative mechanical function: the release and reset of the hammer as part of certain functions in the firing sequence that must recur before each round is fired.
>
> . . .
>
> [T]he trigger resets the hammer each time before the next shot can be fired. *Cargill* explains that this is a separate function of the trigger. Like bump stocks, FRTs do not enable a weapon to automatically fire multiple rounds with a single function of the trigger itself. To wit, even the name for the device makes this clear: a *forced* reset trigger rather than an *automatic* reset trigger.

*NAGR*, 2024 WL 3517504, at *20 (citations omitted; emphasis in original).

A careful reading of *Cargill* exposes a number of references to how the shooter takes some action to engage the trigger and restart the firing cycle of the weapon. So, it is tempting to seize on this "release and reset" language to distinguish FRTs.[4] It would make sense to say that, in the case of bump stocks, there is a release of the trigger (not just the hammer) in addition to its reset, which starts a new "function" of the trigger. However, the *Cargill* majority opinion expressly rejects any interpretation of the machinegun definition to include the shooter's manual input as part of the firing cycle. This is made abundantly clear by the dissenting opinion, which makes those arguments, but did not sway the majority of the Court. *See Cargill*, 602 U.S. at 436 (Sotomayor, J., dissenting) ("[T]he

---

[4] A semiautomatic firearm is distinguished from a machinegun because "[t]he shooter must **release and reengage** the trigger to fire another shot. Machineguns can ordinarily achieve higher rates of fire than semiautomatic firearms because the shooter does not need to **release and reengage** the trigger between shots." *Cargill*, 602 U.S. at 411 (emphasis added). Describing the action of the bump stock-enhanced weapon, the Court wrote: "Bump firing is a balancing act. . . . The right balance produces a reciprocating motion that permits the shooter to repeatedly **engage and release** the trigger in rapid succession." *Id*. at 411 (emphasis added). "[A]ny subsequent shot fired after the trigger has been **released and reset** is the result of a separate and distinct 'function of the trigger.'" *Id*. at 415 (emphasis added). "The bump stock makes it easier for the shooter to move the firearm back toward his shoulder and **thereby release pressure from the trigger and reset it**." *Id*. at 421 (emphasis added).

majority reads each reset as a new 'function.' That reading fixates on a firearm's internal mechanics while ignoring the human act on the trigger referenced by the statute.").

This Court is bound by the Supreme Court's determination that the human pull of the trigger is not the initiation of the "function" of the trigger referenced in the machinegun definition. The purely mechanical focus of the Supreme Court requires this Court to view the FRT's forced reset of the trigger as sufficient to initiate a cycle that fires a single shot with each trigger function—a separate release of the hammer. It does not matter under *Cargill* that the shooter is not required to release the trigger between firing cycles.

If this Court were interpreting the machinegun definition on a clean slate, the result very likely would be different. However, under the *Cargill* case, the Court is constrained to **GRANT** the motion to dismiss count one because FRTs are not machineguns as defined by 26 U.S.C. § 5845(b). For this reason, the Court need not, and does not, reach Bruggeman's arguments regarding the doctrines of lenity, selective enforcement, and fair notice.

## CONCLUSION

For the reasons set out above, the Court **GRANTS** the motion to dismiss count one of the indictment.

**ORDERED** on January 16, 2025.

NELVA GONZALES RAMOS
UNITED STATES DISTRICT JUDGE